UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN CARLOS CHACON-VILLABONA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN NORTHWEST ICE PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-02773-JHC<br><br>ORDER |

## I
## Introduction

This matter comes before the Court on Juan Carlos Chacon-Villabona's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

## II
## Background

According to Petitioner's A-File, he is a citizen of Venezuela who entered the United States without inspection in April 2023. *See* Dkt. # 8-1. The record states that a U.S. Border Patrol agent encountered him near Brownsville, Texas on April 19, 2023, and apprehended him after determining that he had unlawfully entered the United States. *See id.*; *see also* Dkt. # 8-2.

At that time, U.S. Border Patrol took Petitioner into custody, charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and served him with a Notice to Appear (NTA). *Id.*; *see also* Dkt. # 8-3. Petitioner was then released on April 26, 2023, under an Order of Release on Recognizance (OREC). *See* Dkt. ## 8-4 & 8-5.

According to his OREC, Petitioner was required to report to a duty officer at the Chicago Field Office on June 16, 2023, at 8:30 a.m. *See* Dkt. # 8-5. Relying on a Declaration from Deportation Officer Kurtis Reed, the Government contends that "Petitioner did not report as instructed." Dkt. # 6 at 4 (citing Dkt. # 7 at 2). The petition does not discuss this check-in, *see* Dkt. # 1, nor does Petitioner's A-File provide any other information about this supposedly missed check-in. *See generally* Dkt. The A-File does, however, show that U.S. Citizenship and Immigration Services (USCIS) approved Petitioner for an undisclosed immigration benefit from July 2, 2024 through April 2, 2025, and also approved him for an employment authorization document from April 24, 2025 through April 23, 2030. *See* Dkt. ## 6 at 4; 8-6. The record contains no other information about Petitioner's whereabouts or activities between April 2023 and June 2026. *See generally* Dkt.

Petitioner states that on June 19, 2026, he was "sitting in [his] vehicle" when "[United States Immigration and Customs Enforcement (ICE)] officers approached [him], believing that [he] was [his] brother." Dkt. # 1 at 6. He says that he informed the officers that they were mistaken about his identity and provided them with his correct name, but despite this explanation, the officers still detained him and took him into custody. *See id*. He also says that the officers did not present him with an arrest warrant or any justification for the detention at the time of the arrest. *See id*.

The Government does not address Petitioner's mistaken identity argument. *See generally* Dkt. # 6. Instead, it describes Petitioner's arrest as follows: upon encountering Petitioner in

Hood River, Oregon on June 19, 2026, ICE "officers learned through records checks that Petitioner had never reported to any ICE check-in as directed" and so arrested him "pursuant to an I-200, Warrant for Arrest of an Alien." *Id*. at 4; *see also* Dkt. # 7 at 2. As noted by the Government, Petitioner's Form I-213 states that he "was served form I-200" during processing. *See* Dkt. ## 6 at 4 n.2; 8-7. But the actual "Certificate of Service" section on Petitioner's I-200 Form is blank. *See* Dkt. # 8-8.

On the day of the arrest, the ICE Office of Enforcement and Removal Operations cancelled Petitioner's OREC. *See* Dkt. # 8-9. Soon thereafter, Petitioner was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he apparently remains detained today. *See generally* Dkt.[1]

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner says that his re-detention on June 19, 2026, violated his right to due process under the Fifth Amendment of the U.S. Constitution. *See* Dkt. # 1 at 8. The Fifth Amendment of the U.S. Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their

[1] According to the Government, Petitioner had a scheduled appearance before the Tacoma Immigration Court on August 25, 2026. *See* Dkt. # 6 at 5. As the Court has not been informed of any change in Petitioner's detention status following that hearing, it presumes that Petitioner is still detained at the NWIPC.

presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Here, the *Mathews* factors favor Petitioner. As for the first factor, Petitioner has an unquestioned liberty interest in being free from detention.[3] Such interest was only strengthened

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In doing so, the Court recognized that: (1) other circuits have applied *Mathews* to due process challenges to immigration proceedings; (2) the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings"; and (3) the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.* at 1206. More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, at *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, at *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* factors here.

[3] *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that freedom from detention "is the most elemental" of private interests affected by official action); *Zadvydas*, 533 U.S. at 690

by the Government's decision to release Petitioner from custody in April 2023, thereby allowing him to live in the United States for over three years, receive employment authorization, and otherwise "gain[ ] a foothold in the United States" and "develop ties in this country[.]" *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (cleaned up and citations omitted). By revoking Petitioner's release, then, the Government undeniably inflicted a "grievous loss" on Petitioner's liberty and deprived him of a core private interest protected by the Due Process Clause. *Morrissey*, 408 U.S. at 482.

As for the second factor, the facts of this case illustrate precisely why there is a high risk of erroneous deprivation through the current procedures. Petitioner alleges that he was re-detained based on mistaken identity, without an arrest warrant, and without any notice or opportunity to be heard. *See* Dkt. # 1 at 8. The Government does not dispute these claims or make any showings to the contrary. *See generally* Dkt. # 6. And to the extent that the Government is attempting to argue that Petitioner's re-detention was valid because he missed an ICE check-in, the Government has not even provided a record of this supposed missed check-in or conclusively established that Petitioner was served with a Form I-200. *See generally* Dkt. Likewise, "the central issue here is the process by which re-detention occurred, not whether it was warranted." *Gill v. Noem*, 2026 WL 686134, at *3 (W.D. Wash. Mar. 11, 2026). The procedures used were thus clearly deficient, and so the second *Mathews* factor favors Petitioner.

As for the third factor, the Government fails to assert any specific interest that would counsel against the Court finding a due process violation. *See generally* Dkt. # 6. And while the

---

("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (explaining that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]"); *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause).

Court acknowledges the Government's interests in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community[,]" *Zadvydas*, 533 U.S. at 690, it has presented no evidence that Petitioner is a danger to the community. *See generally* Dkt. And courts in this District have repeatedly found that "the Government's interest in re-detaining non-citizens previously released without a hearing is low[,]" especially because the potential costs of pre-detention procedures "are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, this factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. The Court thus concludes that the Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violated his constitutional right to due process under the Fifth Amendment. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c). The Court also notes that the Government's Response provides no valid basis to deny this petition.[4]

[4] Rather than raising any responsive legal arguments or legitimate reasons to deny this petition, and contrary to the Court's Order at Dkt. # 2 directing the Government to show cause as to why the petition should not be granted, the Government's Response merely: (1) misrepresents the Ninth Circuit's holding in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026); (2) argues that Petitioner is detained subject to Section 1225(b) rather than Section 1226(a), without citing any decision from this District that is directly on point or explaining why this Court should ignore the considerable weight of recent decisions from this District supporting the opposite conclusion; and (3) attempts to construe Petitioner's habeas claim as an incognizable Fourth Amendment unlawful arrest claim despite the text of the petition, the standards governing pro se filings, and the robust body of recent habeas cases all indicating that the petition raises a cognizable due process claim under the Fifth Amendment. *See generally* Dkt. # 6.

## IV
## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to the same conditions of release previously imposed on him before his arrest in June 2026. The Court further ORDERS that Petitioner shall not be re-detained unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of September, 2026.

John H. Chun
United States District Judge